PENN CHEMICAL WORKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9247.     Promulgated June 20, 1927.

1. Cash value of tangible property paid in for capital stock determined.

2. No evidence adduced which would bring the petitioner within the terms of section 210 of the Revenue Act of 1917, or section 328 of the Revenue Act of 1918, so as to entitle it to special assessment.

*K. N. Parkinson, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

This proceeding results from the determination of a deficiency in income and excess-profits taxes for the years 1917 and 1918 aggregating $11,298.56. The petitioner avers errors were committed with reference to the following issues: (1) The value of lands and buildings paid in for capital stock in 1910; (2) the application of section 210 of the Revenue Act of 1917 and sections 327 and 328 of the Revenue Act of 1918. All other issues raised in the petition were withdrawn by the petitioner.

### FINDINGS OF FACT.

Petitioner is a Pennsylvania corporation with its principal office and place of business at 1322–1336 Washington Avenue, Philadelphia, having been incorporated in the year 1910 with an authorized capital stock of $500,000. In 1882, Clement R. Wainwright, Israel R. Wainwright, Joseph C. Wainwright (brothers), Clarence James and Frank P. Harned, formed a partnership for the manufacture and sale of caustic soda or lye. Harned and James were experienced in the lye industry and were in possession of trade secrets and the Wainwright brothers possessed the necessary capital. The Wainwrights advanced to the partnership, as a loan, $100,000, to draw interest at 6 per cent per annum and to be repaid in $5,000 blocks, and they also purchased land and buildings at and adjacent to 1332–1336 Washington Avenue, Philadelphia, Pa., which properties were thereafter used by the partnership on a rental basis of 6 per cent net on the purchase price of the properties, the partnership in addition paying all taxes, upkeep expense and cost of new improvements, title to remain in the Wainwrights. The properties were acquired by the Wainwrights at a total cost of $45,000.

Upon the death of James, his partnership interest was purchased by Harned. Israel Wainwright died in 1886, and his interest in the partnership and in the realty passed by inheritance to his brothers, Clement and Joseph Wainwright. Clement died in 1896 and his interest passed, by inheritance, to his brother Joseph. By 1896, Joseph Wainwright and Harned were the sole owners in the business and Joseph Wainwright had become sole owner of the realty.

In 1906, F. King Wainwright and Clement R. Wainwright, sons of Joseph Wainwright, for a cash consideration of $30,000, acquired the partnership interest of their father, resulting in a new partnership with F. King Wainwright, Clement R. Wainwright and Harned each owning approximately a one-third interest. This new partnership continued to use the land and buildings on the same basis as its predecessor.

On April 1, 1909, King and Clement Wainwright purchased from their father the land and buildings for $45,000, giving the father a mortgage for $45,000 and paying no cash. In 1909, the brothers commenced the erection of a new factory and office building, the structure being completed in 1910. The cost of the building was $65,000 and was borne by the brothers.

On March 23, 1910, this structure, together with all land, buildings and machinery permanently affixed thereto, was sold by the brothers to petitioner, for stock in petitioner to the par value of $65,000 and the assumption by the petitioner of a mortgage of $45,000, or total consideration of $110,000.

Between 1882 and 1910, the partnership made alterations and improvements of the land and buildings. All costs were charged to expense and title to such additions or betterments passed to the Wainwrights.

The properties are located in the heart of the industrial section of Philadelphia, and have a switch from the Pennsylvania Railroad running into the premises.

The actual cash value of the lands and buildings, when paid in to petitioner for capital stock, was $150,000.

OPINION.

MILLIKEN: In the first issue, we are concerned with the determination of the cash value of tangible property paid in for capital stock. The issue is common to both years and arises out of a chain of transactions between brothers, father and sons, and partners of many years' association, under circumstances which lead very reasonably to belief in the contention of the petitioner that the values assigned by the parties were merely nominal and that dealings for years had been characterized by a disregard of real values and of fine distinctions as to individual interests. F. P. Harned testified that about the year 1905, he was offered $105,000 for the property and that in 1910, in his judgment, the property was worth $190,000. F. K. Wainwright testified, in his opinion, the property was worth between $150,000 and $160,000 in 1910, when turned over to the corporation. We are satisfied that the land and buildings, when paid in for capital stock of $65,000 par value, had a cash value of $150,000 and that the paid-in surplus of $40,000 thus resulting, is attributable to the value of the land.

In the second issue, the petitioner relies upon a showing of unusually large income earned without expenditures for salesmen and advertising, and that no salaries were paid officers during the taxable years. There is no evidence that invested capital can not be deter-

mined or of abnormality of capital or income, and accordingly the respondent is sustained on this issue.

*Judgment will be entered on 15 days' notice, under Rule 50.*